E-FILED
Tuesday, 08 May, 2018  09:51:44 AM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | | |
|---|---|---|
| KARIN WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 1-17-cv-01145-MMM-JEH |
| | ) | |
| KEYSTONE PEER REVIEW | ) | |
| ORGANIZATION, INC., | ) | |
| | ) | |
| Defendant | ) | |

### FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COMES the Plaintiff, KARIN WILLIAMS (hereinafter "WILLIAMS"), through her attorneys, WESTERVELT, JOHNSON, NICOLL & KELLER, LLC., and complaining against the Defendants, KEYSTONE PEER REVIEW ORGANIZATION, INC.,  (hereinafter "KEPRO") and Defendant, DENISE RINELL, states as follows:

### COUNT 1
### WAGE PAYMENT AND COLLECTION ACT-RETALIATION
Against Defendant, KEYSTONE PEER REVIEW ORGANIZATION, INC.

1.      This action is brought pursuant to 820 ILCS 115/1 *et seq.,* the Wage Payment and Collection Act.

2.      From approximately February 16, 2015 through approximately July 24, 2015, WILLIAMS was a citizen of Illinois and an employee of KEPRO.

3.      At all times relevant to this Complaint, WILLIAMS was an RN auditor at KEPRO.

4.      At all times relevant to this Complaint, WILLIAMS was an hourly non-exempt employee.

5.      From approximately February 16, 2015 through approximately July 17, 2015, WILLIAMS worked from her home in Washington, Illinois.

6.      At all times relevant to this Complaint, Renee Fleming (hereinafter "FLEMING") was WILLIAMS' supervisor at KEPRO.

7.      At all times relevant to this Complaint, Fleming's title  was "Supervisor-- MNNS Program".

8.      At all times relevant to this Complaint, Denise Rinell (hereinafter "RINELL") was FLEMING's supervisor at KEPRO.

9.      At all times relevant to this Complaint, Margaret Young (hereinafter "YOUNG") was the Chief Operating Officer for KEPRO.

10.      On or about May 15, 2015, Denise Rinell informed WILLIAMS that she owed 24 hours of paid time off due to low productivity.

11.      Subsequent to RINELL's aforesaid statement of May 15, FLEMING asked WILLIAMS to work unpaid overtime.

12.      The reason given for the request to work unpaid overtime was to "pay back" KEPRO for the 24 hours it claimed was "owed" due to "low productivity."

13.      On or about June 22, 2015, WILLIAMS sent an email to FLEMING and RINELL that not paying overtime is illegal.

14.      On or about June 25, 2015, WILLIAMS participated in a conference call with RINELL and FLEMING, where they informed WILLIAMS that she would need to use 24 hours of paid time off, unpaid overtime, or have her salary docked due to her low productivity.

15.      At all times relevant to this Complaint, Shelly Clay (hereinafter "CLAY") was the Human Resource Manager at KEPRO.

2

16.     On or about June 26, 2015, WILLIAMS informed CLAY of the illegal activity by leaving a message on CLAY's voicemail.

17.     On or about July 6, 2015, WILLIAMS was receiving fewer assignments than she had received prior to complaining of illegal activity.

18.     By July 10, 2015, all of WILLIAMS' clients had been removed from her case load.

19.     After removing WILLIAMS' clients from her caseload, KEPRO did not assign any clients to WILLIAMS.

20.     Employees of KEPRO, including WILLIAMS, kept track of their hours in a system known as Deltek.

21.     On or about July 13, 2015, FLEMING reduced WILLIAMS' hours in Deltek.

22.     On or about July 13, 2015, FLEMING changed WILLIAMS' notes of productivity in Deltek.

23.     On or about July 13, 2015, RINELL signed off on FLEMING's changes to WILLIAMS' timesheet.

24.     The changes to WILLIAMS' timesheet reduced the number of hours submitted.

25.     WILLIAMS was paid less than she would have been had her timesheet not been changed.

26.     WILLIAMS was not paid for the hours that FLEMING and RINELL eliminated from her timesheet.

27.     WILLIAMS' timesheet was modified without her consent.

28.     The deductions from WILLIAMS' wages were not required by law.

29.     The deductions from WILLIAMS' wages were not to her benefit.

30.     The deductions from WILLIAMS' wages were not in response to a valid wage assignment or wage deduction order.

31.     WILLIAMS did not give express written consent for the deductions from her wages.

32.     WILLIAMS complained to KEPRO that the deductions from her wages were improper.

33.     On or about July 16, 2015 YOUNG ordered WILLIAMS to come into KEPRO'S office in Orland Park, Illinois.

34.     The purpose of WILLIAMS going to the KEPRO office was to have her read company policies out loud to FLEMING.

35.     WILLIAMS was forced to read policies out loud as a result of her complaining of illegal activity.

36.     WILLIAMS was forced to read policies out loud as a result of her complaining that she had not been paid in accordance with the provisions of the Wage Payment and Collection Act, 820 ILCS 115/1 *et. seq.*

37.     No other employee was forced to go to the ORLAND PARK office to read policies out loud.

38.     On or about July 19, 2015, KEPRO terminated WILLIAMS' employment.

39.     As of July 19, 2015 WILLIAMS was performing her job satisfactorily.

40.     KEPRO discharged WILLIAMS because she complained that she had not been paid in accordance with the provisions of the Wage Payment and Collection Act, 820 ILCS 115/1 *et seq.*

41.     KEPRO discriminated against WILLIAMS because she complained that she had not been paid in accordance with the provisions of the Wage Payment and Collection Act, 820 ILCS 115/1 *et seq.*

42.     As a result of said discharge and discrimination, WILLIAMS has lost wages and benefits.

43.     As a result of said discharge and discrimination, WILLIAMS' professional reputation has been damaged.

44.     As a result of said discharge and discrimination, WILLIAMS has suffered emotional distress.

WHEREFORE, Plaintiff, KARIN WILLIAMS, prays judgment against the Defendant, KEYSTONE PEER REVIEW ORGANIZATION, INC., for:

      (a)     Reinstatement with the same seniority status that the employee would have had, but for the violation;

      (b)     Back pay, with interest;

      (c)     Compensation for any other damages sustained as a result of the violation, including, but not limited to her emotional distress;

      (d)     Punitive damages;

      (e)     Attorney's fees and costs; and

      (f)     Additional relief as is just and appropriate.

TRIAL BY JURY IS DEMANDED.

### COUNT 2
### WAGE PAYMENT AND COLLECTION ACT
### UNPAID WAGES AND EXPENSES
Against Defendant, KEYSTONE PEER REVIEW ORGANIZATION, INC.

45.     Plaintiff repeats and re-alleges paragraphs 1-44.

46.     The deductions from WILLIAMS' compensation described in paragraphs 21-27 were not required by law.

47.     The deductions from WILLIAMS' compensation described in paragraphs 21-27 were not in her benefit.

48.     The deductions from WILLIAMS' compensation described in paragraphs 21-27 were not made in response to a valid wage assignment or wage deduction order.

49.     The deductions from WILLIAMS' compensation described in paragraphs 21-27 were not made with her express written consent, given freely at the time the deduction was made.

50.     The deductions from WILLIAMS' compensation described in paragraphs 21-27 violated 820 ILCS 115/9.

51.     WILLIAMS incurred expenses related to services performed for KEPRO.

52.     KEPRO has not reimbursed WILLIAMS for all of the expenses she incurred related to services performed for it.

WHEREFORE, Plaintiff, KARIN WILLIAMS, prays judgment against the Defendant, KEYSTONE PEER REVIEW ORGANIZATION, INC. for:

       (a)     Unpaid wages, final compensation, and expenses;

       (b)     2% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid;

       (c)     Attorney's fees and costs; and

       (d)     Additional relief as is just and appropriate.

TRIAL BY JURY IS DEMANDED.

## COUNT 3
## IL MINIMUM WAGE/OVERTIME LAW
Against Defendant, KEYSTONE PEER REVIEW ORGANIZATION, INC.

53.     Plaintiff re-alleges paragraphs 1-44.

54.     WILLIAMS worked 83 hours for the pay period ending June 13, 2015.

55.     WILLIAMS advised KEPRO that she had worked 83 hours for the pay period ending June 13, 2015.

56.     WILLIAMS advised KEPRO that she had worked 3 hours of overtime for the pay period ending June 13, 2015.

57.     KEPRO disallowed WILLIAMS' overtime for the pay period ending June 13, 2015 because she had not sought prior approval.

58.     KEPRO did not pay WILLIAMS overtime for the pay period ending June 13, 2015.

WHEREFORE, Plaintiff, KARIN WILLIAMS, seeks the following damages from KEPRO:

      (a)     The amount of unpaid wages and overtime pay;

      (b)     An amount equal to the unpaid wages and overtime pay as damages;

      (c)     Her attorney's fees;

      (d)     Her costs of this action;

      (e)     Additional relief as is just and appropriate.

TRIAL BY JURY IS DEMANDED.

**COUNT 4**
**WAGE PAYMENT AND COLLECTION ACT-RETALIATION**
Against Defendant, DENISE RINELL

59.     This action is brought pursuant to 820 ILCS 115/1 *et seq.,* the Wage Payment and Collection Act.

60.     From approximately February 16, 2015 through approximately July 24, 2015, WILLIAMS was a citizen of Illinois and an employee of KEPRO.

61.     At all times relevant to this Complaint, WILLIAMS was an RN auditor at KEPRO.

62.     At all times relevant to this Complaint, WILLIAMS was an hourly non-exempt employee.

63.     From approximately February 16, 2015 through approximately July 17, 2015, WILLIAMS worked from her home in Washington, Illinois.

64.     At all times relevant to this Complaint, Renee Fleming (hereinafter "FLEMING") was WILLIAMS' supervisor at KEPRO.

65.     At all times relevant to this Complaint, Denise Rinell was an officer of Keystone Peer Review Organization, Inc. or an agents of an Keystone Peer Review Organization, Inc. who knowingly permitted Keystone Peer Review Organization, Inc. to violate the provisions of the Illinois Wage Payment and Collection Act.

66.     At all times relevant to this Complaint, Fleming's title  was "Supervisor-- MNNS Program."

67.     At all times relevant to this Complaint, DENISE RINELL (hereinafter "RINELL") was FLEMING's supervisor at KEPRO.

8

68.     At all times relevant to this Complaint, Margaret Young (hereinafter "YOUNG") was the Chief Operating Officer for KEPRO.

69.     On or about May 15, 2015, Denise Rinell informed WILLIAMS that she owed 24 hours of paid time off due to low productivity.

70.     Subsequent to RINELL's aforesaid statement of May 15, FLEMING asked WILLIAMS to work unpaid overtime.

71.     The reason given for the request to work unpaid overtime was to "pay back" KEPRO for the 24 hours it claimed was "owed" due to "low productivity."

72.     On or about June 22, 2015, WILLIAMS sent an email to FLEMING and RINELL that not paying overtime is illegal.

73.     On or about June 25, 2015, WILLIAMS participated in a conference call with RINELL and FLEMING, where they informed WILLIAMS that she would need to use 24 hours of paid time off, unpaid overtime, or have her salary docked due to her low productivity.

74.     At all times relevant to this Complaint, Shelly Clay (hereinafter "CLAY") was the Human Resource Manager at KEPRO.

75.     On or about June 26, 2015, WILLIAMS informed CLAY of the illegal activity by leaving a message on CLAY's voicemail.

76.     On or about July 6, 2015, WILLIAMS was receiving fewer assignments than she had received prior to complaining of illegal activity.

77.     By July 10, 2015, all of WILLIAMS' clients had been removed from her case load.

78.     After removing WILLIAMS' clients from her caseload, KEPRO did not assign any clients to WILLIAMS.

9

79.     Employees of KEPRO, including WILLIAMS, kept track of their hours in a system known as Deltek.

80.     On or about July 13, 2015, FLEMING reduced WILLIAMS' hours in Deltek.

81.     On or about July 13, 2015, FLEMING changed WILLIAMS' notes of productivity in Deltek.

82.     On or about July 13, 2015, RINELL signed off on FLEMING's changes to WILLIAMS' timesheet.

83.     The changes to WILLIAMS' timesheet reduced the number of hours submitted.

84.     WILLIAMS was paid less than she would have been had her timesheet not been changed.

85.     WILLIAMS was not paid for the hours that FLEMING and RINELL eliminated from her timesheet.

86.     WILLIAMS' timesheet was modified without her consent.

87.     The deductions from WILLIAMS' wages were not required by law.

88.     The deductions from WILLIAMS' wages were not to her benefit.

89.     The deductions from WILLIAMS' wages were not in response to a valid wage assignment or wage deduction order.

90.     WILLIAMS did not give express written consent for the deductions from her wages.

91.     WILLIAMS complained to KEPRO that the deductions from her wages were improper.

92.     On or about July 16, 2015 YOUNG ordered WILLIAMS to come into KEPRO'S office in Orland Park, Illinois.

1:17-cv-01145-MMM-JEH   # 20   Page 11 of 16

93.     The purpose of WILLIAMS going to the KEPRO office was to have her read company policies out loud to FLEMING.

94.     WILLIAMS was forced to read policies out loud as a result of her complaining of illegal activity.

95.     WILLIAMS was forced to read policies out loud as a result of her complaining that she had not been paid in accordance with the provisions of the Wage Payment and Collection Act, 820 ILCS 115/1 *et. seq.*

96.     No other employee was forced to go to the ORLAND PARK office to read policies out loud.

97.     On or about July 19, 2015, KEPRO terminated WILLIAMS' employment.

98.     As of July 19, 2015 WILLIAMS was performing her job satisfactorily.

99.     KEPRO and DENISE RINELL discharged WILLIAMS because she complained that she had not been paid in accordance with the provisions of the Wage Payment and Collection Act, 820 ILCS 115/1 *et seq.*

100.    KEPRO and DENISE RINELL discriminated against WILLIAMS because she complained that she had not been paid in accordance with the provisions of the Wage Payment and Collection Act, 820 ILCS 115/1 *et seq.*

101.    As a supervisor at KEPRO and in relating to paragraphs 70-71,76-78,80-89, 92-96, 99-100, DENISE RINELL authorized and/or permitted these actions.

102.    As a result of said discharge and discrimination, WILLIAMS' professional reputation has been damaged and she has lost wages and benefits.

103.    As a result of said discharge and discrimination, WILLIAMS has suffered emotional distress.

11

WHEREFORE, Plaintiff, KARIN WILLIAMS, prays judgment against the Defendant, DENISE RINELL, for:

      (a)    Reinstatement with the same seniority status that the employee would have had, but for the violation;

      (b)    Back pay, with interest;

      (c)    Compensation for any other damages sustained as a result of the violation, including, but not limited to her emotional distress;

      (d)    Punitive damages;

      (e)    Attorney's fees and costs; and

      (f)    Additional relief as is just and appropriate.

TRIAL BY JURY IS DEMANDED.

## COUNT 5
## WAGE PAYMENT AND COLLECTION ACT
## UNPAID WAGES AND EXPENSES
Against Defendant, DENISE RINELL

104.    Plaintiff repeats and re-alleges paragraphs 58-103.

105.    At all times relevant to this Complaint, Denise Rinell was an officer of Keystone Peer Review Organization, Inc.  or an agents of an Keystone Peer Review Organization, Inc. who knowingly permitted Keystone Peer Review Organization, Inc. to violate the provisions of this Act.

106.    The deductions from WILLIAMS' compensation described in paragraphs 21-27 were not required by law.

107.    The deductions from WILLIAMS' compensation described in paragraphs 21-27 were not in her benefit.

108.     The deductions from WILLIAMS' compensation described in paragraphs 21-27 were not made in response to a valid wage assignment or wage deduction order.

109.     The deductions from WILLIAMS' compensation described in paragraphs 21-27 were not made with her express written consent, given freely at the time the deduction was made.

110.     The deductions from WILLIAMS' compensation described in paragraphs 21-27 violated 820 ILCS 115/9.

111.     The deductions referenced in paragraphs 106-110 were authorized and permitted by DENISE RINELL.

112. WILLIAMS incurred expenses related to services performed for KEPRO.

WHEREFORE, Plaintiff, KARIN WILLIAMS, prays judgment against the Defendant, DENISE RINELL, for:

        (a)     Unpaid wages, final compensation, and expenses;

        (b)     2% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid;

        (c)     Attorney's fees and costs; and

        (d)     Additional relief as is just and appropriate.

TRIAL BY JURY IS DEMANDED.

## COUNT 6
## IL MINIMUM WAGE/OVERTIME LAW
Against Defendant, DENISE RINELL

113.     Plaintiff re-alleges paragraphs 58-103.

114.     WILLIAMS worked 83 hours for the pay period ending June 13, 2015.

115.     WILLIAMS advised KEPRO that she had worked 83 hours for the pay period ending June 13, 2015.

13

116.    WILLIAMS advised KEPRO that she had worked 3 hours of overtime for the pay period ending June 13, 2015.

117.    KEPRO disallowed WILLIAMS' overtime for the pay period ending June 13, 2015 because she had not sought prior approval.

118.    KEPRO did not pay WILLIAMS overtime for the pay period ending June 13, 2015.

119.    At all times relevant to this Complaint, Denise Rinell was a person acting directly or indirectly in the interest of KEPRO in relation to Plaintiff, KARIN WILLIAMS.

120.    The non-payment referenced in paragraphs 114-119 was permitted and/or authorized by DENISE RINELL.

WHEREFORE, Plaintiff, KARIN WILLIAMS, seeks the following damages from Defendant,  DENISE RINELL:

(a)    The amount of unpaid wages and overtime pay;

(b)    An amount equal to the unpaid wages and overtime pay as damages;

(c)    Her attorney's fees;

(d)    Her costs of this action;

(e)    Additional relief as is just and appropriate.

TRIAL BY JURY IS DEMANDED.

## CERTIFICATION

Under penalties as provided by law pursuant to Sec. 1-109 of the Illinois Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to the matters therein stated to be on information and belief and as to such matters the undersigned certifies that he verily believes the same to be true.

KARIN WILLIAMS, Plaintiff,


BY: ____/s/ Kerrianne L. Waters_____
           One of Plaintiff's Attorneys

THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF ILLINOIS PEORIA DIVISION, is hereby requested to issue Summons directed to the Sheriff of Rock Island County, Illinois, to be by him served upon defendant, Denise Rinell, along with a copy of this complaint as follows.

      SERVE:     Denise Rinell
                 9410 Turkey Hollow Road
                 Taylor Ridge, IL 61284

Personal Service Requested

Said summons returnable as provided by law.

_____/S/ KERRIANNE L. WATERS_____

KERRIANNE L. WATERS
WESTERVELT, JOHNSON, NICOLL & KELLER, LLC
411 HAMILTON BOULEVARD, SUITE 1400
PEORIA, IL 61602
P| (309) 671-3550
F| (309) 671-3588
E| KWATERS@WJNKLAW.COM