E-FILED
Monday, 04 March, 2019 02:18:13 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| KARIN WILLIAMS,<br><br>    Plaintiff,<br><br>v.<br><br>KEYSTONE PEER REVIEW ORGANIZATION, INC., and DENISE RINELL,<br><br>    Defendants. | Case No. 17-1145-MMM-JEH |

## MEMORANDUM OPINION AND ORDER

Presently before the Court are Defendants' Motions for Summary Judgment. (ECF Nos. 22 and 38.) For the reasons stated herein, Defendant Denise Rinell's Motion for Summary Judgment (ECF No. 38), which the Court interprets as a motion to join Keystone Peer Review Organization's ("KEPRO") Motion for Summary Judgment (ECF No. 22), is GRANTED. Defendant KEPRO's Motion for Summary Judgment (ECF No. 22) is DENIED. KEPRO's second Motion for Summary Judgment (ECF No. 55) remains outstanding and will be addressed by the Court in a separate order.

### OVERVIEW

The primary issue in this case is whether KEPRO unlawfully withheld Plaintiff's wages, and ultimately terminated her employment, because Plaintiff refused to work unpaid overtime to make up for hours she had billed to the organization, but had not worked. KEPRO is a private organization contracted by the State of Illinois to provide quality assurance and fee-for-service utilization review in inpatient hospital settings for the State's Medical Assistance program. Since KEPRO's first motion for summary judgment is procedural in nature, the Court addresses

Defendants' second motion for summary judgment (which is on the merits of Plaintiff's claims) in a separate order. The Court limits its background information in this analysis to the procedural issues that stand before it.

## PROCEDURAL HISTORY

Plaintiff Karin Williams filed suit against KEPRO on February 21, 2017, in the Tenth Judicial Circuit Court of Illinois, alleging violations of the Illinois Wage Payment and Collections Act and retaliation for reporting those violations. On April 7, 2017, KEPRO filed a Notice of Removal with this Court, asserting the Court has diversity jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332, as Plaintiff is a citizen of Illinois and KEPRO has its principal place of business in Pennsylvania. Within the Notice, KEPRO estimated Plaintiff's potential damages to be in excess of the $75,000 threshold for federal diversity jurisdiction.

On May 3, 2018, KEPRO filed its first Motion for Summary Judgment, arguing Plaintiff lacks standing to bring her claims and that the doctrine of judicial estoppel also bars her causes of action. On May 9, 2018, KEPRO revived its Motion for Summary Judgment, by refiling it, after the Court entered Plaintiff's First Amended Complaint the day prior. On May 30, 2018, Plaintiff filed her Response to KEPRO's summary judgment motion, and on June 7, 2018, KEPRO filed its Reply.

On June 4, 2018, Defendant Denise Rinell, added by Plaintiff's First Amended Complaint (Rinell is a citizen of the state of Missouri), filed her Motion for Summary Judgment, requesting to "hereby join[ ] in and adopt[ ] by reference codefendant [KEPRO's] Combined Motion for Summary Judgment and Brief in Support[.]" (ECF No. 38.) Simultaneously, Rinell filed a Motion to Dismiss Counts IV and VI of Plaintiff's First Amended Complaint, which the Court granted in part and denied in part on August 16, 2018. (ECF No. 50.)

In its August 16, 2018, Order, the Court dismissed Plaintiff's retaliation claim (Count IV) under the Wage Payment and Collection Act, 820 ILCS 115 (West 2018), against Rinell and allowed Plaintiff's claim (Count VI) under the Illinois Minimum Wage Law, 820 ILCS 105 (West 2018), to proceed. The Court also declared it would reserve ruling on the summary judgment motions at hand until the bankruptcy court had the opportunity to examine Plaintiff's effort to reopen her case. (ECF No. 50 at 1-2.) This Order follows.

## PLAINTIFF'S BANKRUPCTY HISTORY[1]

Plaintiff, and her husband, filed a Chapter 13 bankruptcy petition on October 11, 2012. They disclosed their assets on their bankruptcy schedules, representing to the Court and their creditors that at the time of filing the Chapter 13 petition, they had no assets other than those disclosed on their bankruptcy schedules. On December 6, 2012, the bankruptcy court confirmed Plaintiff's Chapter 13 plan, which called for monthly payments over the course of sixty months. The plan was completed in June 2017, all creditors were paid in full, and on July 6, 2017, Plaintiff was granted a discharge.

On February 21, 2017, four and a half months before her bankruptcy was discharged, Plaintiff filed the lawsuit at hand. Plaintiff continued to make payments under the bankruptcy plan from the time she filed the instant suit to the time the plan was completed. Subsequent to the filing of this suit, however, Plaintiff failed to amend her bankruptcy schedules to disclose any additional assets, potential assets, or causes of action. Plaintiff also failed to advise the Chapter 13 trustee of her suit.

Approximately one year after Plaintiff filed her lawsuit, counsel for KEPRO took her deposition where it was discovered that Plaintiff inadvertently failed to disclose her lawsuit as an

---

[1] The information in this section is taken from the bankruptcy court's summary in its November 30, 2018, Opinion. (ECF No. 58-1 at 2-3; *In re Williams*, No. 12-82275, 2018 WL 6287968, at *1 (Bankr. C.D. Ill. Nov. 30, 2018).

3

asset to the bankruptcy court. Counsel for KEPRO advised Plaintiff's attorney that the lawsuit should have been disclosed to the bankruptcy court prior to the discharge. On May 24, 2018, Plaintiff filed a motion to reopen her Chapter 13 case for the purpose of disclosing the lawsuit at hand as an asset of the bankruptcy estate.

On November 30, 2018, the bankruptcy court issued an order, stating: (1) Plaintiff's motion was allowed and her Chapter 13 case was reopened; (2) Plaintiff would have 14 days from the date of the order to file amended schedules for her employment claim and lawsuit; and (3) the Chapter 13 Trustee would have an additional 14 days from the date the amended schedules were filed to respond. On December 4, 2018, Plaintiff filed amended schedules with the bankruptcy court, which included her claim in the suit at hand.

Finally, on February 4, 2019, the Trustee responded that "1. On December 4, 2018, the [Plaintiff] filed a Schedule of Post-Petition Property disclosing a potential claim . . . against her former employer. 2. The Trustee has reviewed the Schedule of Post-Petition Property and determined that no further administrative action is required. The Debtor's plan has already paid 100% of all filed claims rendering any additional action or administration unnecessary." (ECF No. 59-1 at 1.) Plaintiff's chapter 13 bankruptcy case was officially closed the same day.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. "[T]he nonmoving party must [then] show evidence sufficient to establish every element that is essential to its claim and for which it will bear the burden of proof at trial." *Diedrich*

4

*v. Ocwen Loan Servicing, LLC*, 839 F.3d 583, 591 (7th Cir. 2016) (internal citation omitted). All facts and reasonable inferences are construed in the light most favorable to the nonmoving party. *Laborers' Pension Fund v. W.R. Weis Co., Inc.*, 879 F.3d 760, 766 (7th Cir. 2018).

**DISCUSSION**

Defendants raise two arguments in their summary judgment motion as to why they are entitled to judgment as a matter of law. The first argument is that Plaintiff lacks standing to bring her claims because "any cause of action that accrues during the pendency of a Chapter 13 Bankruptcy is the property of the bankruptcy estate." (ECF No. 18 at 1-2.) The second argument is that "by failing to disclose her potential claims in the instant lawsuit to the bankruptcy court, [P]laintiff is judicially estopped from contending that she is entitled to damages in the instant litigation." (*Id.* at 2.) The Court disagrees. Due to recent activity in Plaintiff's bankruptcy case, and considering the declarations of the bankruptcy trustee, there is sufficient evidence in the record to demonstrate Defendants are not entitled to summary judgment on the aforementioned issues.

**I.      Plaintiff Has Standing**

The first issue for the Court to decide is whether Plaintiff has ownership interest in her own legal claims since she initially failed to notify the bankruptcy court that she was taking the action at hand, and she did not bring her lawsuit on behalf of the bankruptcy estate. Here, the Court finds Plaintiff does have standing, as the bankruptcy court permitted Plaintiff to reopen her Chapter 13 case, the trustee relinquished any ownership interest/rights in Plaintiff's civil law claims, and the bankruptcy court once again closed Plaintiff's Chapter 13 case shortly thereafter.

Defendants argue Plaintiff lacks standing because Rule 6009 of the Federal Rules of Bankruptcy Procedure stands for the proposition that, "a debtor can pursue legal claims *for the benefit of the estate*, but lacks standing to bring a case for her own benefit." (ECF No. 22 at 7) (emphasis in original). Defendants then cite *Rainey v. United Parcel Service, Inc.*, 466 F. App'x

542, 544 (7th Cir. 2012), to bolster their contention that when a bankruptcy case is closed, a debtor will be estopped from bringing any claims for her own benefit if those claims "were concealed from creditors during the bankruptcy proceedings." (*Id.*) Defendants finally argue the case at hand is factually similar to *Van Horn v. Martin*, No. 5:13-cv-74, 2015 WL 925895, at *1 (E.D. Ark. Mar. 3, 2015), *aff'd on other grounds*, 812 F.3d 1180 (8th Cir. 2016), where the district court ruled the debtor failed to have standing because his claim remained property of the bankruptcy estate. (*Id.* at 8.)

"A plaintiff's standing determines a court's jurisdiction to hear [her] suit and is an essential component of Article III's case-or-controversy requirement." *Lujano v. Town of Cicero*, No. 07-C-4822, 2012 WL 4499326, at *5 (N.D. Ill. Sept. 28, 2012) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "As such, 'standing must be present at all stages of the litigation.'" *Id.* (quoting *Parvati Corp. v. City of Oak Forest, Illinois*, 630 F.3d 512, 516 (7th Cir. 2010)). "A plaintiff has standing to sue when she alleges a 'distinct and palpable injury' that is capable of being redressed if her request for relief is granted. *Id.* (quoting *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 475 (1982)).

The situation at hand is nearly identical to one that our sister court addressed in *Lujano v. Town of Cicero*, No. 07-C-4822, 2012 WL 4499326, at *5-6 (N.D. Ill. Sept. 28, 2012). Here, as in *Lujano*, Defendants do not argue that Plaintiff lacks Article III standing, as her complaint indicates an injury traceable to Defendants' alleged actions. Instead, Defendants argue that Plaintiff lacks "prudential standing" because the bankruptcy estate retains ownership interest in her claims since she failed to notify the bankruptcy court of this lawsuit before her Chapter 13 case was initially closed on July 6, 2017.

There are two concepts of standing. There is Article III standing, which requires an injury in fact, and there is "prudential standing," a more complex, judge-made concept of standing. *MainStreet Organization of Realtors v. Calumet City, Ill*., 505 F.3d 742, 744 (7th Cir. 2007). "Prudential standing considerations generally prohibit a litigant's raising another person's legal rights." *Id.* at 751 n.1. "A plaintiff can allege an injury that satisfies Article III and still be without prudential standing when she does not assert her own legal claims or interests." *Lujano*, 2012 WL 4499326, at *5 (citing *FMC Corp. v. Boesky*, 852 F.2d 981, 988 (7th Cir. 1988)). "Unlike constitutional standing, defects in prudential standing do not act as limits on a court's subject matter jurisdiction." *Id.* (citing 6A Wright & Miller, Federal Practice and Procedure § 1542 (2d ed. 2009)).

Defendants argue "if the [debtor] does not disclose assets by the time the bankruptcy is closed, it forever remains property of the estate, and the trustee remains the real party in interest." (ECF No. 22 at 7.) This mantra (as it applies to Chapter 7 bankruptcies) is inapposite to the case at hand, as Plaintiff's bankruptcy was filed under Chapter 13, her bankruptcy case was reopened to allow her to file amended schedules, and the bankruptcy trustee relinquished any rights to her lawsuit before recommending Plaintiff's case be closed again. Moreover, Bankruptcy Rule 6009, which applies to Chapters 7, 11 and 13, directs that "[w]ith or without court approval the *trustee* or *debtor in possession* may prosecute . . . or commence and prosecute any action or proceeding in behalf of the estate before any tribunal." FED. R. BANKR. P. 6009 (emphasis added). As such, Chapter 13 grants the debtor possession of the estate's property, which includes "all legal or equitable interests of the debtor in property as of the commencement of the case." *Cable v. Ivy Tech State College*, 200 F.3d 467, 472-73 (7th Cir. 1999), *overruled on other grounds by Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013); 11 U.S.C. § 541(a)(1).

Here, Plaintiff had the authority to prosecute the claims at hand when the bankruptcy court allowed her to reopen her bankruptcy case and file amended schedules to include her lawsuit. Plaintiff retained standing, without regard to any potential ownership interest by the estate, when the bankruptcy trustee relinquished any interest in her claim and suggested her bankruptcy case once again be closed. Since Plaintiff had prudential standing to bring this lawsuit at both of these junctures, the Court will not dismiss her claims for lack of prudential standing now.

The Seventh Circuit used similar reasoning in *Rainey v. United Parcel Service, Inc.*, 466 F. App'x 542, 544 (7th Cir. 2012), when it vacated the district court's order dismissing plaintiff's case because the plaintiff had reopened his bankruptcy case and informed the trustee of his previously undisclosed legal claims. More importantly, the Court of Appeals allowed (as the district court suggested) plaintiff to pursue his discrimination claims because his bankruptcy proceeding was reopened, and the trustee was made aware of the pending claims. *Id.*

Finally, the evidence in the record demonstrates the bankruptcy trustee relinquished and/or abandoned all ownership interest in the proceeds of Plaintiff's claims when she declared, "[I] [have] reviewed the [amended schedule] and determined that no further administrative action is required . . . . [t]he [Plaintiff] has already paid 100% of all filed claims rendering any additional action or administration unnecessary." (ECF 59-1 at 1.) For the aforementioned reasons, Plaintiff's claims are no longer the property of the bankruptcy estate, and Defendants' summary judgment motion on the issue of standing is DENIED.

**II.     Judicial Estoppel does not Bar Plaintiff's Claims**

Defendants next argue that Plaintiff should be precluded from bringing the claims at hand because she failed to notify the bankruptcy court of her legal claims in bad faith and in order to take advantage of inconsistent positions in separate legal proceedings. Plaintiff responds by

8

asserting the doctrine of judicial estoppel has been incorrectly applied to the situation at hand, as the record fails to demonstrate Plaintiff intentionally misled either court in order to gain an unfair advantage over Defendants. For the reasons stated below, the Court finds that the record, as a whole, fails to demonstrate Plaintiff was acting in bad faith when she failed to notify the bankruptcy court of the lawsuit at hand.

The doctrine of judicial estoppel prevents litigants from manipulating the judicial system by prevailing in different cases or phases of a case by adopting inconsistent positions. *In re Williams*, No. 12-82275, 2018 WL 6287968, at *3 (Bankr. C.D. Ill. Nov. 30, 2018) (citing *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)). The standard for invoking judicial estoppel is "not reducible to any general formulation or principle," but there are three factors that "typically inform the decision whether to apply the doctrine in a particular case." *Id.* at 750. First, "a party's later position must be clearly inconsistent with its earlier position;" second, "the party [must] [have] succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or second court was misled;" and third, "the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* at 750-51 (internal citations omitted).

In the situation at hand, Plaintiff filed for Chapter 13 bankruptcy in October 2012. She disclosed all of her assets on the proper bankruptcy schedules, and represented to the bankruptcy court and her creditors that at the time of filing her petition, she had no other assets than those disclosed on the schedules. On December 6, 2012, the bankruptcy court confirmed Plaintiff's bankruptcy plan, which called for monthly payments over the course of sixty (60) months. Her

plan was completed in June 2017, all creditors were paid in full, and one month later, Plaintiff was granted a discharge.

On February 8, 2018, Plaintiff was deposed for the claims at hand, during which time opposing counsel asked Plaintiff if she "ever amend[ed] [her] bankruptcy plan to identify the presence of this lawsuit?" (ECF No. 56-2 at 13.) Plaintiff replied that she didn't know she could or should. *Id.* On May 3, 2018, KEPRO filed the summary judgment motion at hand identifying the issue of standing, and on May 24, 2018, Plaintiff filed a motion to reopen her Chapter 13 bankruptcy case in order to file amended schedules and to disclose this suit, which was granted by the bankruptcy court over KEPRO's objections.

The record before the Court fails to demonstrate Plaintiff had any nefarious intent in failing to inform the bankruptcy court of the lawsuit at hand in the latter part of February 2017. The bankruptcy court agreed with this conclusion when it observed:

> Here, [Plaintiff] had no motive to conceal the lawsuit against KEPRO from the Court. The [Plaintiff's] Chapter 13 Plan provided for full payment to their creditors. From the time the cause of action arose, [Plaintiff] continued to make all payments until the plan was completed and all creditors were paid in full. The [Plaintiff] made no calculated decision to conceal information from the Court . . . . The [Plaintiff] derived no benefit from failing to disclose the lawsuit on their bankruptcy schedules, and *the Court can find no motive to conceal the lawsuit* given that the Debtors' [C]hapter 13 Plan provided for full repayment to all creditors. Further, no creditors will be prejudiced by the reopening of this case. The presence of this additional asset would have added nothing to the bankruptcy estate for the benefit of creditors, as creditors stood to be paid the same amount regardless of its presence. Therefore, the [Plaintiff's] actions *were not intended* to make a mockery of the judicial system. The doctrine of judicial estoppel is not applicable to this case.

*Williams*, 2018 WL 6287968, at *3 (emphasis added). This Court concurs with the findings of the bankruptcy court. For the aforementioned reasons, construing all facts and reasonable inferences in Plaintiff's favor, Defendants fail to demonstrate that this Court or the bankruptcy court was

misled by Plaintiff's failure to disclose the lawsuit at hand in 2017. Accordingly, Defendants motion for summary judgment on the issue of judicial estoppel is DENIED.

## CONCLUSION

For the reasons stated herein, Defendant Rinell's Motion to Join KEPRO's Motion for Summary Judgment (ECF No. 38) is GRANTED, and KEPRO's first Motion for Summary Judgment (ECF No. 22) is DENIED. KEPRO's second Motion for Summary Judgment (ECF No. 55) remains outstanding and will be addressed by the Court in a separate order.


Entered on March 4, 2019.                /s/ Michael M. Mihm
                                         Michael M. Mihm
                                         United States District Judge