UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| KARIN WILLIAMS,<br><br>    Plaintiff,<br><br>v.<br><br>KEYSTONE PEER REVIEW ORGANIZATION, INC., and DENISE RINELL,<br><br>    Defendants. | Case No. 17-1145-MMM-JEH |

## MEMORANDUM OPINION AND ORDER

Presently before the Court is Defendant Keystone Peer Review Organization's ("KEPRO") second Motion for Summary Judgment. (ECF No. 55) For the reasons stated herein, KEPRO's second Motion for Summary Judgment is GRANTED, and Plaintiff's retaliation claim under the Illinois Wage Payment and Collection Act ("IWPCA") (Count I) is DISMISSED WITH PREJUDICE. Plaintiff's claims for unpaid wages and expenses under the IWPCA against both Defendants (Counts II and V) will advance, as will Plaintiff's claims under the Illinois Minimum Wage/Overtime Law (Counts III and VI). Plaintiff's IWPCA retaliation claim against Defendant Rinell (Count IV) was dismissed by the Court in an earlier Order. (*See* ECF No. 50.)

## STATEMENT OF JURISDICTION

The Court has original diversity jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332, as Plaintiff is a citizen of the state of Illinois and KEPRO is incorporated, and maintains its principal place of business, in the state of Pennsylvania. Plaintiff's claims against KEPRO also exceed the $75,000 amount in controversy threshold required to maintain diversity jurisdiction. The Court exercises supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over Defendant

Denise Rinell, as Plaintiff's claims against Rinell arise from the same nucleus of operative facts as her claims against KEPRO, and due to the fact that Rinell is a citizen of the state of Missouri.

## BACKGROUND

Plaintiff Karin Williams began work as a full-time nurse reviewer for Keystone Peer Review Organization in February 2015. KEPRO is a private organization contracted by the state of Illinois to provide quality assurance and fee-for-service utilization review in inpatient hospital settings for the State's Medical Assistance program.[1] While at KEPRO, Williams was responsible for helping to determine if children were eligible for the medical waiver for nursing hours at home. Williams was tasked with gathering factual information in order to answer an interactive online questionnaire. The completed questionnaire would then go to a medical director for a determination of waiver eligibility. Williams' fact-gathering duties included reviewing the patient's individual medical records and then conducting a face-to-face interview with the patient's caregiver(s). Williams was paid by the hour and was able to work remotely using online data management tools provided by KEPRO. Williams could also accrue paid time off ("PTO") as a full-time employee working for the organization.

In her first few months with KEPRO, Williams was under the impression she would be compensated for her time as long as she was logged on to the system and was available for work. That impression changed on May 15, 2015, when Williams was on a conference call with KEPRO Director of Operations, Denise Rinell. During the call, Rinell instructed Williams and other nurse reviewers that from that day forward they were to only enter time for "active productivity," which meant time spent reviewing files or otherwise working on their assigned caseload. Rinell also mentioned the nurse reviewers would be required to complete a minimum of five assessments per

---

[1] http://www.illinois.gov/hfs/medicalproviders/proqio/Pages/default.aspx

week in order to be remunerated for a full 40-hour week.  KEPRO's productivity requirement was revised to seven cases per week a few days later.

The impetus for the May 2015 conference call was an audit performed by the state of Illinois for all of the employees involved in the MNNS (Medical Necessity Nursing Services) program.  Because of the audit, it was discovered that in April 2015 Williams had entered twenty-four (24) hours of time she did not work, but for which she was paid in full by KEPRO.  Sometime in June 2015, KEPRO requested Williams to use her accrued PTO or work unpaid overtime to make up for the twenty-four-hour deficit from April 2015.  Williams refused to work unpaid overtime to make up for the deficit and complained to KEPRO that it was illegal to require an hourly employee to work unpaid overtime to make up for the hours she was mistakenly paid.  However, Williams did tell KEPRO she "would feel more comfortable having [her] next paycheck docked if that is an option" instead.  (ECF No. 56-4 at 109.)  Williams had also offered to use PTO to make up for the 24-hour deficit on May 15, 2015.  (ECF No. 56-3 at 19.)

In July 2015, KEPRO docked Williams' timesheet by approximately seventeen and a half hours and failed to compensate her for another three hours of overtime.[2]  (Rinell Dep. at 51-63.)  KEPRO also stopped assigning work to Williams and required her to attend an additional training session at its Orland Park office.  The additional training consisted of Williams reading aloud numerous KEPRO employment policies to her supervisor and signing them in acknowledgement of their receipt.  Williams was then instructed to take the remaining policies, there were seventy-five (75) in total, home to review.  Williams interpreted the punitive tone of her individual training

---

[2] In KEPRO's Reply it asserts several of the additional material facts outlined in Plaintiff's Response are "disputed, but . . . immaterial," but fails to otherwise comport with Local Rule 7.1(D)(3)(a), which requires "[f]or each fact, state succinctly whether: (3) it is immaterial but disputed, in which case state the reason th[at] the fact is immaterial and support the claim that the fact is disputed by providing citations to evidentiary documentation, attached as exhibits and referenced by specific page[.]" CDIL-LR 7.1(D)(3)(a). Accordingly, the Court interprets Defendant's insufficient replies as admissions to those material facts.

3

session, and the fact that KEPRO removed her active cases and failed to assign her new ones, among other events, as constructive discharge of her employment. On August 28, 2015, KEPRO offered Williams a temporary part-time nurse auditor position via letter (ECF No. 56-3 at 39), which she declined to accept.

## PROCEDURAL HISTORY

Williams filed suit against KEPRO on February 21, 2017, in the Tenth Judicial Circuit Court of Illinois, alleging violations of the Illinois Wage Payment and Collection Act ("IWPCA") and retaliation for reporting those violations. Williams also included a claim for unpaid overtime against KEPRO pursuant to the Illinois Wage/Overtime Law. On April 7, 2017, KEPRO filed a Notice of Removal with this Court, asserting the Court had diversity jurisdiction over Plaintiff's claims because Plaintiff is a citizen of Illinois and KEPRO has its principal place of business in Pennsylvania. Within the Notice, KEPRO estimated Plaintiff's potential damages to be in excess of the $75,000 minimum threshold for federal diversity jurisdiction.

On May 8, 2018, the Court entered Plaintiff's First Amended Complaint which added Defendant Denise Rinell to Plaintiff's existing claims against KEPRO. Five days earlier, KEPRO had filed its first Motion for Summary Judgment, arguing Plaintiff lacked standing to bring her claims and that the doctrine of judicial estoppel served to bar her causes of action. On May 9, 2018, KEPRO revived its first Motion for Summary Judgment by refiling it. Twenty-one days later, Williams filed her Response, and on June 7, 2018, KEPRO filed its Reply.

Three days before KEPRO filed its Reply, Defendant Denise Rinell filed her Motion for Summary Judgment (which the Court interpreted as motion to join), requesting to join KEPRO's first Motion for Summary Judgment and corresponding memorandum of law. Simultaneously,

Rinell filed a Motion to Dismiss Counts IV and VI of Plaintiff's First Amended Complaint, which the Court granted in part and denied in part on August 16, 2018.

In its August 16, 2018, Order, the Court dismissed Plaintiff's IWPCA retaliation claim against Rinell (Count IV), but allowed Plaintiff's claim under the Illinois Minimum Wage Law (Count VI) to proceed. The Court also declared it would reserve ruling on Defendants' first Motion for Summary Judgment until the bankruptcy court had the opportunity to examine Williams' effort to reopen her Chapter 13 bankruptcy case.

On March 4, 2019, the Court addressed Defendants' first Motion for Summary Judgment granting Rinell's motion to join the summary judgment motion, and denying the motion on both of its bases. Since KEPRO's first Motion for Summary Judgment addressed procedural issues and not the merits of Plaintiff's claims, the Court declared it would enter a ruling on KEPRO's second Motion for Summary Judgment in a separate order. KEPRO filed its second Motion for Summary Judgment[3] on September 27, 2018, which Defendant Rinell did not join. (ECF No. 55.) Williams filed her Response[4] on October 18, 2018 (ECF No. 56), and KEPRO filed its Reply[5] (ECF No. 57) fourteen days later. [6] This Order follows.

**LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party has the burden of providing

---

[3] Hereinafter referred to as "MSJ."
[4] Hereinafter referred to as "Resp."
[5] Hereinafter referred to as "Reply."
[6] Due to the ongoing proceedings in Williams' Chapter 13 bankruptcy case, it has taken this Court approximately four months to rule on Defendants' outstanding motions for summary judgment. On February 7, 2019, Williams filed a Status Report with the Court (ECF No. 59), which clarified the status of her Chapter 13 bankruptcy case and allowed this Court to proceed.

proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. "[T]he nonmoving party must [then] show evidence sufficient to establish every element that is essential to its claim and for which it will bear the burden of proof at trial." *Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583, 591 (7th Cir. 2016) (internal citation omitted). All facts and reasonable inferences are construed in the light most favorable to the nonmoving party. *Laborers' Pension Fund v. W.R. Weis Co., Inc.*, 879 F.3d 760, 766 (7th Cir. 2018).

## DISCUSSION

There are three outstanding claims against Defendant KEPRO, but its summary judgment motion only addresses Williams' retaliation claim under the IWPCA (Count I). In its motion, KEPRO argues Williams' retaliation claim is not actionable because her claim "is not based upon any complaint of non-payment of wages;" rather, it "is based upon [her] objection to working unpaid overtime and [her] refusal to use [PTO] for payments previously made to her by KEPRO." (MSJ at 1.) As such, KEPRO argues there is no genuine issue of material fact, and that it is entitled to summary judgment. *Id.* at 2. Williams counters KEPRO's argument by asserting it was her initial refusal to work unpaid overtime that was the impetus for the latter docking of hours on her timesheet, which was a violation of the IWPCA. Williams also maintains she was discharged by KEPRO "for her complaints of not being paid in accordance with the IWPCA when her hours were unilaterally reduced without her consent[.]" (Resp. at 7.) However, despite her assertion to the contrary, Williams fails to substantiate the claim she was discharged for complaining about docked hours with any evidence in the record. Williams also fails to argue how her individual claim for retaliatory discharge—whether it be for complaining about KEPRO's request she work unpaid overtime to make up for overbilled time, or for the unlawful docking of her wages—is covered under the Act. Accordingly, KEPRO's Motion for Summary Judgment on Count I of Plaintiff's Amended Complaint is GRANTED.

## I. Retaliatory Discharge under the IWPCA

"In Illinois, an at-will employee may be terminated at any time for any or no reason." *McGrath v. CCC Information Services, Inc.*, 731 N.E.2d 384, 388 (Ill. App. Ct. 2000) (citing *Palmateer v. International Harvester Co.*, 421 N.E.2d 876 (Ill. 1981)). "Illinois courts, however, have recognized the tort of retaliatory discharge as a limited and narrow exception to the at-will employment rule." *Id.* "The tort was first recognized as a cause of action in Illinois in *Kelsay v. Motorola, Inc.*, 384 N.E.2d 353 (Ill. 1978), where the Illinois Supreme Court let stand an action in which the plaintiff alleged he had been terminated for exercising his statutory rights under the Workers' Compensation Act." *Id.* "Several years later, in *Palmateer v. International Harvester Co.*, 421 N.E.2d 876 (Ill. 1981), the supreme court expanded the tort to encompass instances in which an employee is terminated for acts of 'whistle-blowing.'" *Id.* Under Illinois law, a valid retaliatory discharge claim requires a showing that (1) an employee has been discharged; (2) in retaliation for her activities; and (3) the discharge violates a clear mandate of public policy. *Tullis v. Townley Engineering & Mfg. Co., Inc.*, 243 F.3d 1058, 1062 (7th Cir. 2001) (citing *Hartlein v. Illinois Power Co.*, 601 N.E.2d 720, 728 (Ill. 1992)).

While there is sufficient evidence in the record for a reasonable jury to infer Williams was constructively discharged, Williams has failed to adduce sufficient evidence that demonstrates she was discharged because of any complaint relating to the docking of her time. Additionally, even if Williams was discharged for complaining about KEPRO's request she work unpaid overtime to make up for a billing error, the IWPCA, in and of itself, does not offer a cause of action for unpaid overtime requests, and Plaintiff's claim lacks a basis for relief. KEPRO concedes it deleted hours from Williams' timesheet and shorted her July 2015 paycheck, but it contends the docking was the result of a miscommunication between Williams and her immediate supervisor. While Williams

may have a valid claim under the IWPCA for the docking of her time, she does not have an actionable claim for retaliatory discharge based on a complaint concerning unpaid overtime.

"The Illinois General Assembly passed the IWPCA in 1973 'to provide employees with a cause of action for the timely and complete payment of earned wages or final compensation, without retaliation from employers.'" *Costello v. BeavEx, Inc*., 810 F.3d 1045, 1050 (7th Cir. 2016) (quoting *Byung Moo Soh v. Target Marketing Systems, Inc*., 817 N.E.2d 1105, 1107 (Ill. App. Ct. 2004)). "[T]he IWPCA prohibits employers from taking deductions from employees' wages unless the deductions are '(1) required by law; (2) to the benefit of the employee; (3) in response to a valid wage assignment or wage deduction order; [or] made with the express written consent of the employee, given freely at the time the deduction is made.'" *Id.* (citing 820 ILL. COMP. STAT. 115/9). "The IWPCA also provides a cause of action for employees who suffer retaliation from employers for complaining about their failure to make payments pursuant to the IWPCA." *Barker v. Atlantic Pacific Lines*, No. 13-C-1272, 2013 WL 4401382, at *9 (N.D. Ill. Aug. 14, 2013) (citing 820 ILL. COMP. STAT. 115/14(c)). Section 14 of the Act addresses retaliatory discharge and states:

> Any employer, or any agent of an employer, who discharges or in any other manner discriminates against any employee because that employee has made a complaint to his employer . . . *that he or she has not been paid in accordance with the provisions of this Act*, or because that employee has caused to be instituted any proceeding under or related to this Act, or because that employee has testified or is about to testify in an investigation or proceeding under this Act, is guilty, upon conviction, of a Class C misdemeanor. An employee who has been unlawfully retaliated against shall be entitled to recover through a claim filed with the Department of Labor or in a civil action, but not both, all legal and equitable relief as may be appropriate. In a civil action, such employee shall also recover costs and all reasonable attorney's fees.

820 ILL. COMP. STAT. § 115/14(c) (West 2014) (emphasis added).

In Illinois, the issue of statutory interpretation is a question of law. *Commonwealth Edison Co. v. Illinois Commerce Commission*, 16 N.E.3d 801, 808 (Ill. App. Ct. 2014). "The cardinal rule of statutory construction is to ascertain and give effect to the legislature's intent." *Id.* (citing *Rogers v. Imeri*, 999 N.E.2d 340 (Ill. 2013)). "The best indicator of the legislator's intent is the express language of the statute, which should be given its plain and ordinary meaning." *Id.* "When the language of a statute is clear and unambiguous, it must be applied without resort to other aids of construction." *Id.* (citing *Alternate Fuels, Inc. v. Director of the Illinois Environmental Protection Agency*, 830 N.E.2d 444 (Ill. 2004)).

Williams' deposition testimony indicates that she recalls two KEPRO employees requesting she work unpaid overtime to make up for twenty-four (24) hours of time for which she was paid, but did not work. (Williams Dep. at 149-50.) Williams testified she refused to work unpaid overtime and informed her supervisor she would work unpaid overtime only as a salaried employee, because to work unpaid overtime as an hourly employee would be illegal. *Id.* at 150. Williams also testified, the day after she told her supervisor she refused to work unpaid overtime, she called Shelly Clay in the KEPRO Human Resources department and left a voice message stating, "Hey, just [a] heads-up, I just don't think this is legal, and I don't want to do anything that jeopardizes KEPRO." *Id.* at 151. Williams also claims she asserted her right to refuse to work unpaid overtime in an email (*id.*), in a conference call with Defendant Rinell (*id.*), and in other general conversations with her supervisor (*id.*). Williams then testified her constructive discharge was directly related to her Human Resources complaint because "[s]ometime after contacting HR, not immediately, but a week or two, my clients disappeared." *Id.* at 170.

Unfortunately for Williams, a request by her employer to work unpaid overtime is not prohibited under the IWPCA, unless a pre-existing agreement between the parties states otherwise.

9

*See Wharton v. Comcast Corp.*, 912 F. Supp. 2d 655, 658 (N.D. Ill. 2012) ("The IWPCA . . . does not provide an independent right to payment of wages and benefits; instead, it only enforces the terms of an existing contract or agreement."); *Barlett v. City of Chicago*, No. 14-C-7225, 2015 WL 135286, at *2 (N.D. Ill. Jan. 9, 2015) ("The IWPCA requires that the employer honor his contract; it does not, however, confer rights to compensation that are absent from the employee's contract or employment agreement.") (internal citation omitted). Here, Williams offers no proof of an existing employment agreement that restricts the use of unpaid overtime. Additionally, she fails to provide any argumentation as to how KEPRO's request to work unpaid overtime to make up for a billing imbalance falls within the express language of the Act. Finally, Williams fails to adduce *any* evidence that she actually complained to KEPRO about her wages being unlawfully docked (*see* Resp. at 4-6; Williams Dep.), and that this complaint was the cause behind her constructive discharge. Accordingly, there is no genuine issue of material fact for a jury to determine, and KEPRO's Motion for Summary Judgment on the issue of retaliatory discharge is GRANTED.

## CONCLUSION

For the reasons stated herein, KEPRO's second Motion for Summary Judgment is GRANTED, and Plaintiff's retaliation claim pursuant to the IWPCA (Count I) against it is DISMISSED WITH PREJUDICE. Plaintiff's claims for unpaid wages and expenses under the IWPCA against both Defendants (Counts II and V) will advance, as will Plaintiff's claims under the Illinois Minimum Wage/Overtime Law (Counts III and VI). Plaintiff's IWPCA retaliation claim against Defendant Rinell (Count IV) was dismissed by the Court in an earlier Order. The Court will contact the Parties regarding the remaining schedule for this cause.

Entered on March 13, 2019.          /s/ Michael M. Mihm
        Michael M. Mihm
        United States District Judge